**2018 UT App 190**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSHUA ROBERT KING,
Appellant.

Opinion
No. 20170186-CA
Filed October 4, 2018

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 161901267

Diana Pierson and Sarah J. Carlquist, Attorneys
for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

HARRIS, Judge:

¶1　The district court ordered Joshua Robert King to pay restitution for damages he caused to a home in the course of burglarizing it. The court's restitution order was entered without objection. King, however, asserts that his counsel abandoned him after sentencing, and that he was either completely unrepresented or ineffectively represented during the restitution phase. We agree, and therefore vacate the restitution order and remand for further proceedings.

BACKGROUND

¶2    Late one evening, while heavily intoxicated, King attempted to forcibly enter a stranger's home. The homeowner confronted King and was able to push him out of the doorway, preventing him from entering the home. During the struggle, King fell down, his shoe came off, and the shoe broke one of the home's windows. The police later arrived and arrested King, and as they did so, he kicked and spat at them.

¶3    At the time, King was on parole related to previous offenses, and promptly contacted his parole officers to inform them of the arrest. King had exhibited relatively good behavior while on parole—at least up to that point—and King's parole officers did not immediately seek to have him recommitted to prison. King posted bail, and soon took steps to repair the damaged window, and offered to pay for any additional damage he may have caused.

¶4    Four months after his arrest, the State charged King with one count of aggravated burglary, two counts of propelling a bodily substance at a correctional or peace officer, and one count of assault against a peace officer. King retained private counsel, who eventually negotiated a plea agreement with the State in which King agreed to plead guilty to one count of burglary, a third-degree felony, and one count of propelling a bodily substance at a correctional or peace officer, a class A misdemeanor. In the plea statement, King admitted that he "tried to enter into a place [without] permission and caused damage." During his sentencing hearing, members of King's family spoke, expressing their support for King, explaining his lifelong struggle with alcohol, and detailing the many admirable character traits he possesses when not intoxicated. King spoke as well, and expressed remorse, telling the district court that, because he felt obligated to do so, he had already gone back to the home and fixed the window. Later in the hearing, King's

attorney also mentioned that King had fixed the window, and the State never contradicted this account. The homeowner was not present at sentencing and had not given a statement.

¶5 At the conclusion of the sentencing hearing, the district court sentenced King to prison on the felony count and to a year in jail on the misdemeanor count, but ordered his terms of incarceration to run concurrently with each other, as well as with the sentence he was serving for his previous offense. At the prosecution's request, the district court also ordered King to pay "full and complete restitution," although the court left open the issue of the restitution amount.

¶6 Three weeks after the sentencing hearing, and before the State's deadline to seek a specific restitution amount, King's counsel filed a Notice of Withdrawal, stating that "[c]ounsel's scope of representation . . . has been fulfilled." That notice was unaccompanied by a motion or a proposed order; the district court did not sign any order authorizing counsel's withdrawal.

¶7 Four days later, the State filed a Motion for Order of Restitution with the district court, requesting "complete and court ordered restitution in the amount of $400.00." This motion was served on King's counsel, but not on King himself. The motion was very brief, and neither the motion nor the accompanying order contained any documentation—or even any indication—as to what the $400 was intended to cover. No opposition or objection to the State's specific restitution request was ever filed. A few weeks later, the district court signed the State's apparently unopposed restitution order.

¶8 King learned of the restitution order a few weeks later, when he received a letter from the district attorney's office informing him that he "owe[d] money." King then sent multiple letters to the prosecutor and the court complaining about the restitution award, and the court set the matter for hearing.

¶9    At the hearing, King appeared without an attorney, and objected to the restitution award on the ground that "[t]he only thing that got broke was a window and it got fixed." The court asked King if he was still represented by counsel, and King answered that he was not. The prosecutor also believed King to be unrepresented, stating "the defendant's attorney, he withdrew." The court explained that it had signed the restitution order without holding a hearing because the order was unopposed. The court noted that King's attorney had filed a notice of withdrawal, but observed that "there wasn't an order filed that I could grant or deny the notice of withdrawal." After realizing that King may need replacement counsel, the court declined to take any further action at that hearing other than appointing a public defender to represent King in any future proceedings, including any appeal.

ISSUES AND STANDARDS OF REVIEW

¶10    King now appeals the restitution order, and asks us to consider two alternative arguments. First, King contends that he was denied the right to counsel because he was in fact unrepresented during restitution proceedings. Whether a defendant has the right to counsel during a particular phase of criminal proceedings is a constitutional issue that presents a question of law that we review for correctness. *State v. Cabrera*, 2007 UT App 194, ¶ 7, 163 P.3d 707.

¶11    Second, and in the alternative, King contends that, even if he was still represented during the restitution proceedings, his counsel provided ineffective assistance by failing to object to the State's motion for restitution. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law, which we consider de novo." *State v. Courtney*, 2017 UT App 172, ¶ 20, 424 P.3d 198 (quotation simplified).

ANALYSIS

¶12  We find King's second argument persuasive, and therefore do not reach the merits of his first argument. We agree with King that he was entitled to counsel during restitution proceedings in this case, *see State v. Cabrera*, 2007 UT App 194, ¶ 14, 163 P3d 707 (holding that criminal defendants have the right to counsel at restitution hearings "when restitution is ordered as part of a sentence that also includes actual or suspended jail time"), and for the purposes of this appeal, we assume—without deciding—that he did in fact have an attorney during the restitution proceedings that occurred in this case.[1] But even if King technically still had an attorney during the restitution proceedings, we agree with King that his attorney performed in a constitutionally ineffective manner by failing to object to the State's proposed restitution order.

---

1. The parties agree that King's attorney failed to comply with applicable rules governing attorney withdrawal from representation in criminal cases. *See* Utah R. Crim. P. 36 ("[A]n attorney may not withdraw as counsel of record in criminal cases without the approval of the court."). Because the attorney failed to properly withdraw, he remained King's counsel of record through the restitution proceedings. We acknowledge, however, that the constitutional right to counsel "cannot be satisfied by mere formal appointment." *United States v. Cronic*, 466 U.S. 648, 655 (1984) (quotation simplified); *see also United States v. Collins*, 430 F.3d 1260, 1264–66 (10th Cir. 2005) (holding that, where an attorney appeared at a hearing but, due to a pending motion to withdraw, "remained silent" and refused to advocate on his client's behalf, the client was effectively unrepresented for Sixth Amendment purposes). We need not delve deeper into this question, however, because we are persuaded that, even if King technically had a lawyer during the restitution proceedings, that attorney was ineffective.

¶13 "[T]he right to counsel is the right to the effective assistance of counsel." *United States v. Cronic*, 466 U.S. 648, 654 (1984) (quotation simplified). A defendant has a right to the effective assistance of counsel, regardless of whether defendant's counsel is a public defender or a privately-retained lawyer. *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980). "To succeed on a claim of ineffective assistance of counsel, a defendant must show both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *State v. Galindo*, 2017 UT App 117, ¶ 7, 402 P.3d 8 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶14 To show deficient performance, "a defendant must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *State v. Montoya*, 2004 UT 5, ¶ 24, 84 P.3d 1183 (quotation simplified). This standard does not guarantee an error-free trial. *See Cronic*, 466 U.S. at 656 (stating that the Sixth Amendment is not violated "even if defense counsel may have made demonstrable errors"). Indeed, "we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hales*, 2007 UT 14, ¶ 70, 152 P.3d 321 (quotation simplified).

¶15 Failing to object to or oppose a motion is not, in and of itself, deficient performance, especially when an objection would be futile. *See State v. Bragg*, 2013 UT App 282, ¶ 20, 317 P.3d 452 (holding that a failure to object to the admission of evidence "that was clearly allowed" was not deficient performance); *State v. Gunter*, 2013 UT App 140, ¶ 35, 304 P.3d 866 (stating that "[t]here is no requirement that counsel engage in futile acts"). However, when there is no strategic reason for doing so and when the objection stands a reasonable chance of success, failing

to object to a motion can constitute deficient performance. *See, e.g., State v. Milligan*, 2012 UT App 47, ¶ 17, 287 P.3d 1 (finding deficient performance when counsel failed to object to the court's sentencing decision in a situation where there was "a reasonable probability that the trial court would have reached a different conclusion" had counsel objected).

¶16 In this case, there is no indication that counsel had any strategic reason for failing to object to the State's restitution request. The State posits that counsel may have been worried that an objection would result in a restitution order of more than $400, and that, given the relatively small amount requested, counsel made a tactical decision not to object. But nothing in the record supports this supposition, and the record contains numerous indications to the contrary. First and most notably, counsel filed a notice of withdrawal a few days *before* the State's restitution request and then failed to appear at the follow-up hearing, indicating that counsel's failure to object was not tactical but, rather, the result of counsel's belief that he was no longer representing King. Second, both counsel and King himself made statements, on the record, indicating that the only damage to the home that they were aware of was the broken window, and that King had already voluntarily repaired all of that damage prior to sentencing. Indeed, there is no evidence anywhere in the record—not even in the State's restitution request—that King caused any other damage to the home. Finally, in King's statements to the court at the review hearing, he avers that his attorney never contacted him to discuss the restitution request. On this record, we conclude that King has overcome the "strong presumption" that counsel's conduct was reasonable. *See Hales*, 2007 UT 14, ¶ 70.

¶17 To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also State v. Garcia*,

2017 UT 53, ¶ 42, 424 P.3d 171. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We are persuaded that, in this case, there is a reasonable probability that the district court would not have entered the State's restitution order if counsel had objected. As noted, both King and his counsel represented at sentencing that King had repaired the broken window, and there is no indication in the record that these representations were untrue. Moreover, there was no indication in the State's restitution paperwork—or anywhere else in the record—that its request was intended to cover anything other than the one broken window. Under these circumstances, our confidence in the accuracy of the restitution order is sufficiently undermined.

CONCLUSION

¶18    Assuming that King had an attorney at all during the restitution proceedings that occurred in this case, that attorney provided King with constitutionally ineffective assistance. Accordingly, we vacate the district court's restitution order, and remand this case for further proceedings regarding restitution.

_____