**2021 UT App 26**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TYLER CHRIS NELSON,
Appellant.

Opinion
No. 20190495-CA
Filed March 11, 2021

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 181912217

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and David A. Simpson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Tyler Chris Nelson appeals his conviction for aggravated robbery. He asserts that his counsel provided ineffective assistance in failing to object to the introduction of a statement Nelson made during a police interview in which Nelson implied that he had committed a similar crime in the past. Nelson also asserts that the district court erred when it refused his request for a lesser-included-offense jury instruction. We affirm.

BACKGROUND[1]

¶2    One morning, Victim, who worked as an assistant manager at a restaurant, went to his car in the restaurant parking lot to smoke a cigarette. As Victim sat behind the wheel of his car with the door open, Nelson approached. Thinking Nelson might want a handout, Victim told him, "I don't have any money or cigarette[s]." Nelson responded, "I don't want that. I want your car. . . . I want to borrow your car." Victim told him, "No. Absolutely not." By this point, Victim "could tell that [Nelson] was planning on" stealing his car. After Nelson told Victim "Don't be stupid" a few times, Victim got out of the car to get away from Nelson. Nelson kept "coming at" Victim "[f]ace to face," saying, "Give me your car, I'm going to take your car. Give me your keys. Don't be dumb." Victim then saw Nelson pull out a can of what appeared to be pepper spray, which Nelson aimed at Victim's face. Nelson was unable to discharge the spray, and Victim ran toward the front door of the restaurant. But Nelson gave chase, caught Victim around his waist, took Victim to the ground, and "ripped" Victim's keys off his belt loop. Victim received minor bruises to his legs as a result of the incident.

¶3    Nelson then headed toward Victim's car. Victim got up and chased Nelson, but by the time he got to his car, Nelson had already started the engine. Victim reached into the car with the intent to "grab [Nelson] by his hair and pull him out the [driver-side] window," but he ended up getting only Nelson's sunglasses. Nelson took off in Victim's car. Victim set the

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (quotation simplified).

sunglasses on the concrete curb near the corner of the restaurant building and called the police immediately.

¶4     Officers took a statement from Victim and collected the sunglasses as evidence. Testing the sunglasses yielded no useful fingerprints, so the glasses were submitted for DNA analysis. A swab of the glasses revealed two genetic profiles. Victim was excluded as a match, but the major DNA profile returned a "CODIS hit" (i.e., a match) on Nelson, making Nelson the prime suspect in the theft.[2] The DNA analyst who performed the test explained that the "frequency of occurrence of the [major DNA] profile among unrelated individuals in the U.S. population is estimated to be: 1 in 27.3 octillion for Caucasians, 1 in 4.53 decillion for African-Americans and 1 in 277 octillion for Hispanics."[3]

¶5     After identifying Nelson as the suspect based on the DNA analysis, the detective (Detective) on the case located Nelson, who been booked into the Salt Lake County jail on an unrelated case involving similar conduct, *see infra* ¶ 11, and obtained a warrant to collect Nelson's DNA by means of a cheek swab. At the time he obtained the swab, Detective also interviewed Nelson, the audio recording of which was played at trial. In that recording, Detective identified himself, advised Nelson of his

---

2. "CODIS is the FBI's Combined DNA Index System—a centrally-managed database linking DNA profiles culled from federal, state, and territorial DNA collection programs, as well as profiles drawn from crime-scene evidence, unidentified remains, and genetic samples voluntarily provided by relatives of missing persons." *United States v. Kriesel*, 508 F.3d 941, 944 (9th Cir. 2007).

3. An octillion is a number equal to a one followed by twenty-seven zeros, and a decillion is a one followed by thirty-three zeros. *See Number*, Webster's Third Int'l Dictionary (2002).

*Miranda* rights, and notified Nelson he was investigating a robbery that took place at the restaurant in question. Nelson said, "I know where you're talking about." Detective said, "Tell me what happened," and Nelson said, "Same thing." Nelson elaborated, "You know, I was really dope sick . . . [n]eeded some money, needed a car and . . . so . . . [t]ook the car from him . . . ." Nelson added that he had the car "[m]aybe four or five hours" and then abandoned it at a parking lot a few miles away. Detective thanked Nelson for his honesty and told Nelson, "I will try to get this screened as soon as possible so you can deal with it while you're in here, rather than . . . getting out and getting jammed up with something else again."

¶6     Nelson was charged with one count of aggravated robbery. *See* Utah Code Ann. § 76-6-301(1)(a) (LexisNexis 2017) ("A person commits robbery if . . . the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property."); *id.* § 76-6-302(1)(c) ("A person commits aggravated robbery if in the course of committing robbery, he . . . takes or attempts to take an operable motor vehicle."). At trial, the State presented the evidence as summarized above. Nelson did not testify or present any witnesses in his defense. However, he requested that the jury be instructed on the lesser-included offense of theft. *See id.* § 76-6-404 ("A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof."). Nelson argued "that if there is any form of evidence that supports one of the jury instructions, the defendant should be able to present that to a jury as an alternative." The State opposed the lesser-included-offense instruction: "There's been no testimony that would raise any inference that the keys were not on [Victim's] person at the time when they were taken. Based on [Nelson's] own admission . . . , he took the keys from [Victim]." The district court denied

the request, stating that, given the "limited testimony with regard to the incident," there was no "alternate way to interpret . . . what the testimony is with regard to the incident. . . . [I]t's not like [Victim] dropped the keys and they were picked up, or [Nelson] went into the back of the restaurant and found keys lying down."

¶7　The jury found Nelson guilty as charged, and he was sentenced to a prison term of five years to life. Nelson appeals.

ISSUES AND STANDARDS OF REVIEW

¶8　Nelson first asserts that his trial counsel (Counsel) was constitutionally ineffective in failing to object to the admission of the portion of the police interview where Nelson admitted to a previous incident, which he characterized as the "same thing" as the incident involving Victim. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law . . . ." *State v. King*, 2018 UT App 190, ¶ 11, 437 P.3d 425 (quotation simplified).

¶9　Nelson also claims that the district court erred in refusing to instruct the jury with regard to the lesser included offense of theft. "A trial court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness." *State v. Florez*, 2020 UT App 76, ¶ 15, 465 P.3d 307 (quotation simplified).

ANALYSIS

I. Ineffective Assistance of Counsel

¶10　Nelson first claims that Counsel rendered ineffective assistance by failing to object to the admission of the portion of the police interview in which Nelson told Detective that what

happened with Victim was the "same thing" as another incident in which Nelson was involved.

¶11 To understand Nelson's claim, it is helpful to understand the context of the "same thing" statement. The State had planned for Detective to testify—before the audio recording was played for the jury—that he was the lead detective in another aggravated robbery to which Nelson had pleaded guilty a few months before the interview. The State pointed out that the phrase "same thing" was in reference to a prior conversation with Detective in which Nelson had confessed to stealing a car in a similar way during a previous robbery. In this context, the State sought to present evidence that Nelson had previously told Detective, "Yes, . . . I took her purse, I took the keys, I took the car," with regard to the prior robbery. The State argued that evidence of the prior bad act should come in to provide context:

> So when [Nelson] says "same thing," and then follows it up with "I was dope sick, I needed money, I took the car," [evidence of the previous offense is] not in any way to prove that . . . this is a pattern of behavior. [Evidence of the previous offense is] simply giving context to that [phrase] "same thing," because without that predicate knowledge, . . . it doesn't come in anywhere.

Counsel objected to the admission of the prior-act evidence, arguing that the audio recording should stand on its own: "[The jurors are] going . . . to hear the tape, there's nothing that we can do about that. And they should be able to listen to the tape and put together the facts that correspond with this case, but not injecting evidence from another case."

¶12 The district court agreed with Counsel and did not allow the State to present the prior-act evidence, noting that the evidence of the previous offense was not "necessary" to give "context to the statement on the tape" and that admitting the

prior-bad-act evidence would be "problematic" because it posed an "undue risk of prejudice to [Nelson] in that it appears to be extremely similar, very close in time." Consequently, the jury heard the audio recording in which Nelson admitted to doing the "same thing" without hearing the additional information about the prior incident to which the statement referred.

¶13    On appeal, Nelson argues that it is difficult to understand why—after the district court had already ruled that evidence of the prior incident would be inadmissible—Counsel conceded to allowing admission of the "same thing" statement. Nelson asserts that "[a]llowing the jury to speculate as to the meaning of 'same thing' was highly improper" because it led the jury to construe the statement as referring to a similar bad act, all to the prejudice of Nelson. And Nelson argues that Counsel unreasonably "failed to object to what was essentially an admission . . . of a prior bad act." He claims that had Counsel objected, "the court would no doubt have agreed that the statement should have been redacted" because (1) the statement "required the jury to speculate as to its meaning" and (2) the court had already ruled that the prior-bad-act evidence relating to the first robbery was inadmissible.[4] With the remedy of redaction likely at hand, Nelson argues that Counsel rendered ineffective assistance by "allowing evidence of a prior bad act, out of [Nelson's] own mouth," to be admitted without objection.

---

4. While, as we explain below, we limit our analysis to the prejudice prong, we agree with Nelson that the "same thing" statement "could easily have been excised" and that the State is incorrect that "there was no way to present only part of the recorded confession without diminishing its critical probative value." To this end, we encourage practitioners—both defense lawyers and criminal prosecutors—to ensure that recorded statements are properly redacted to suit the evidentiary landscape.

¶14    To succeed on a claim of ineffective assistance of counsel, Nelson must demonstrate that Counsel's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Nelson's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. Here, we assume, without deciding, that Counsel performed deficiently in failing to object to the admission of the portion of the interview in which Nelson admitted to doing the "same thing," and we accordingly limit our analysis to *Strickland*'s prejudice prong.

¶15    To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In assessing whether a defendant has met this standard, we therefore must "consider the totality of the evidence before the judge or jury and then ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *State v. Gallegos*, 2020 UT 19, ¶ 33, 463 P.3d 641 (quotation simplified).

¶16    "Here, [Nelson] cannot show that, but for [Counsel's] deficient performance, there is a reasonable probability that he would have been acquitted, because the overwhelming, undisputed evidence on the record supports the jury's conviction in this case." *See State v. Beverly*, 2018 UT 60, ¶ 31, 435 P.3d 160; *see also Seel v. Van Der Veur*, 971 P.2d 924, 927 (Utah 1998) (noting that a jury's knowledge of a defendant's prior felonies did not result in prejudice given "the overwhelming weight of evidence against" the defendant). "And in determining whether [Nelson] has shown a reasonable probability that [redacting the audio recording] would have

changed the jury's guilty verdict, this piece of evidence must be considered alongside the totality of the evidence that was already before the jury." *See State v. Scott*, 2020 UT 13, ¶ 46, 462 P.3d 350 (quotation simplified).

¶17 The evidence that Nelson committed the robbery was overwhelming. First, even without the admission that he did the "same thing" on a previous occasion, Nelson told Detective that he knew about the robbery at the restaurant, and he unambiguously admitted that he "[t]ook the car" from Victim because he was "dope sick" and "[n]eeded some money" and "a car." He further admitted to keeping the car for several hours before abandoning it. So, even if the jury had not heard the "same thing" statement, it still would have heard Nelson admit that he stole Victim's car and kept it for some time. Moreover, Nelson's DNA profile was found on the sunglasses grabbed by Victim, providing compelling evidence that Nelson was the individual who stole the car. On appeal, Nelson does not address these two key pieces of evidence. Instead, he focuses on the "same thing" statement, arguing that it likely caused the jury to speculate that Nelson had committed a "similar prior bad act." That admission may well have inspired the jury to speculate about Nelson's character or criminal record, but it does not follow that this potential speculation prejudiced Nelson such that it undermines our confidence in the verdict. We are unconvinced that any amount of speculation by the jury about what Nelson meant by "same thing" would have made a difference in the outcome of the trial given his unqualified confession and the physical evidence linking Nelson to the robbery.

¶18 Thus, because Nelson is unable to carry his burden of demonstrating prejudice caused by the admission of the "same thing" statement, his claim of ineffective assistance is unavailing.

## II. Lesser Included Offense

¶19 Nelson also asserts that the district court erred in refusing to instruct the jury with regard to a lesser included offense of theft. At trial, Nelson argued that he was entitled to the instruction "if there [was] any form of evidence" in support of the lesser included offense. He claimed that the evidence submitted at trial supported a simple theft instruction because his intent, he asserted, when he took the keys from Victim, was "to take the car, not to harm [Victim]." Nelson further argued, "[T]he question is up to the jury as a matter of fact whether or not there was a physical altercation, how the keys were obtained, was there pepper spray used. . . . So I think the jury needs to weigh the credibility of [Victim] and . . . Nelson in regards to whether it was a theft of a vehicle or an aggravated robbery." The State responded by asserting, "[T]he evidence that was put before the jury does not lend itself to the inclusion of a lesser included of a simple theft of an automobile. We've heard ample testimony that there has been force . . . ." The court denied Nelson's request for the lesser-included-offense instruction, noting that the "very limited," "clear," and unambiguous testimony "presented at trial" did not allow for the lesser included instruction.

¶20 "[I]t has long been recognized that [a lesser-included-offense instruction] can . . . be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *State v. Baker*, 671 P.2d 152, 157 (Utah 1983) (quotation simplified). By providing the jury the option of convicting a defendant of a lesser included offense, a defendant is thus "afforded the full benefit of the reasonable doubt standard." *Id.* at 156.

¶21 But the right to a lesser-included-offense instruction is not absolute. "A criminal defendant is entitled to a jury instruction on a lesser included offense if (1) the charged offense and the lesser offense have overlapping statutory elements *and* (2) there is a rational basis in the record as a whole for convicting the defendant of the lesser offense rather than the one charged." *State v. LoPrinzi*, 2014 UT App 256, ¶ 17, 338 P.3d 253 (quotation simplified); *accord State v. Powell,* 2007 UT 9, ¶¶ 24, 27, 154 P.3d 788; *see also* Utah Code Ann. § 76-1-402(4) (LexisNexis 2017). Thus, "a defendant's right to a lesser included offense instruction is limited by the evidence and only justified where there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Powell*, 2007 UT 9, ¶ 27 (quotation simplified). And while a district court must view "the evidence in the light most favorable to the defendant requesting the instruction," *see id.*, a "defendant is not entitled to a [lesser-included-offense] jury instruction" if the request "is based on sheer speculation," *id.* ¶ 33, "that the jury could have potentially disbelieved the witnesses' testimony," *id.* ¶ 32. "Instructing the jury as to lesser included offenses for which there is no support in the evidence would allow the jury to preempt the prosecutor's function in charging offenses and the judge's function in imposing sentences." *Id.* ¶ 33 (quotation simplified).

¶22 Here, apart from Nelson's "sheer speculation," *see id.*, that the jury may have disbelieved Victim's testimony, "there was no rational basis in the evidence requiring a lesser included offense instruction," *see id.* ¶ 28. The evidence at trial did not provide a rational basis for the jury to both acquit Nelson of aggravated robbery and convict him of simple theft of a vehicle. Indeed, the only evidence the jury heard from Nelson was the audio recording in which he told Detective that he "[t]ook the car from [Victim]" because he "[n]eeded some money, needed a car." In the interview, Nelson never asserted that he took the car without force, and no other evidence supporting that contention was

introduced at trial. In contrast, Victim unequivocally stated that force was used. Victim testified that Nelson chased him as he attempted to retreat inside the restaurant, grabbed him "around [his] waist area and pretty much overpowered [him]," and then "ripped [the keys to the car] off [his] belt loop," bruising Victim's legs in the process. Moreover, Victim testified that Nelson kept "coming at him," "face to face," saying, "Give me your car, I'm going to take your car. Give me your keys. Don't be dumb," while pointing what appeared to be a can of pepper spray at him. Nelson never presented any evidence that he happened to find the keys in the parking lot or that he otherwise obtained them from Victim without using force. On the other hand, the State presented evidence that Nelson "grabbed" Victim, took him "to the ground," and "pushed [Victim] down once [Nelson] had a hold of the keys." As the State argues in its brief, "Nelson may have *wished* the jurors could have accepted his unsupported theory and convicted him only of theft," but the only evidence presented to the jury was that Nelson forcefully took the car from Victim.

¶23　Thus, the district court did not err in denying Nelson's request for a lesser-included-offense jury instruction. The State presented uncontroverted evidence that sufficient force was used to support a charge of robbery rather than theft. And because Nelson failed to present any evidence that he did not use force in taking the keys away from Victim, there was no evidence to support the lesser included offense of theft.

CONCLUSION

¶24　Counsel did not render ineffective assistance, because Nelson, given the overwhelming evidence of his guilt, cannot show he was prejudiced by the admission of his statement that he had recently committed an offense similar to the charged offense. And because Nelson presented no evidence that he obtained the keys from Victim absent the use of force, while the

State produced ample evidence that force was used when Nelson stole Victim's car, the district court did not err in denying Nelson's request for a lesser-included-offense jury instruction.

¶25    Affirmed.

_____