**2021 UT App 73**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LANCE SCOTT LITTLEJOHN,
Appellant.

Opinion
No. 20200224-CA
Filed July 9, 2021

Seventh District Court, Price Department
The Honorable George M. Harmond
No. 191700798

K. Andrew Fitzgerald, Attorney for Appellant

Sean D. Reyes, John J. Nielsen, and Carissa Uresk,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     Lance Scott Littlejohn pled guilty to three third-degree felonies, including aggravated assault, an offense he committed while under court supervision for a previous aggravated assault against the same victim. The district court sentenced Littlejohn to prison, and he now appeals, asserting not only that the sentence itself was an abuse of the court's discretion, but also that his attorney rendered constitutionally ineffective assistance at both the plea hearing and at sentencing, and that the court committed plain error in accepting his guilty plea. We reject Littlejohn's arguments, dismiss part of his appeal, and affirm his sentence.

BACKGROUND

¶2      In November 2019, Littlejohn and his wife (Wife) were in a car together, with Littlejohn driving. The two of them were arguing, and Wife was "crying and ask[ing] to be let out of the vehicle" but Littlejohn refused. Wife was able to call 911, and during the call Littlejohn could be heard in the background telling Wife, "I told you never to hit me. I told you I'd never hit you if you didn't hit me first. I've kept to my promise. You [expletive] hit me first." Police attempted to stop the vehicle, but perceived that Littlejohn was trying to elude them; he was driving recklessly and, according to Wife, was threatening to crash the car on purpose, telling her that he "was not going to be caught and do another two and a half years." At one point, Littlejohn slammed on the brakes, causing Wife to hit the dashboard. When Littlejohn finally stopped, police observed that Wife had blood running from her nose. Related to these events, the State charged Littlejohn with kidnapping, a second-degree felony; domestic assault, a class B misdemeanor; and reckless driving, also a class B misdemeanor.

¶3      At the time of these events, Littlejohn was under court supervision related to a previous assault he committed against Wife. In that incident, which occurred just over a year earlier, Littlejohn and Wife had a dispute about their plans for the evening: Littlejohn wanted to work on a computer, and Wife wanted to watch movies. The argument quickly escalated into a physical altercation resulting in Littlejohn throwing a computer tower at Wife, grabbing Wife's face and causing her nose to bleed, and holding her in a headlock until she lost consciousness. When police arrived, they observed that "the apartment . . . appeared as though a bomb had gone off inside," with broken glass and fresh blood on the ground. As a result of these events, Littlejohn pled guilty to attempted aggravated domestic assault

(a class A misdemeanor) and possession of a controlled substance[1] (also a class A misdemeanor), but the court in that case agreed to hold the plea in abeyance pending a twenty-four-month supervision period. Littlejohn was in the midst of that supervision period in November 2019, when the incident in the car took place.

¶4 Following the November 2019 incident, Littlejohn was taken into custody at the county jail, and the court issued a pretrial protective order prohibiting Littlejohn from "directly or indirectly contacting, harassing, telephoning, mailing, e-mailing, or communicating in any way with" Wife. A few weeks later, however, jail officials discovered that Littlejohn had been telephoning Wife through another inmate's account and had been trying to "coerce [her] into changing her statement regarding the incident" in the vehicle. These efforts had apparently been somewhat successful, as evidenced by Wife contacting police "requesting to change her statement." Related to these events, the State charged Littlejohn with five additional third-degree felonies: four counts of violation of a pretrial protective order and one count of witness tampering.

¶5 A few weeks later, Littlejohn and the State entered into a plea agreement. Under the terms of that agreement, Littlejohn agreed to plead guilty to three third-degree felonies: one count of aggravated assault (filed pursuant to an amended information) relating to the car incident, and two counts—one for violating the pretrial protective order and one for witness tampering—relating to the jail phone calls. In exchange, the State agreed to dismiss all remaining charges stemming from those two incidents. In addition, Littlejohn stipulated to the court

---

1. As police cleared the home, they discovered drug paraphernalia and what appeared to be heroin.

setting aside his plea in abeyance, and to the entry of his misdemeanor guilty pleas, in the previous assault case.

¶6     Before accepting the guilty plea, the district court engaged in a lengthy colloquy with Littlejohn. The court specifically asked Littlejohn if he was "under the influence of any controlled substance, even if it's something that might be prescribed to you that would interfere with your ability to understand what we're doing today," to which Littlejohn answered, "No, sir." The court informed Littlejohn that, at sentencing, he could be sentenced to prison, and Littlejohn confirmed that he understood that. The court also informed Littlejohn that he had the right to seek withdrawal of his plea, but that he must seek that relief before sentence was imposed, to which Littlejohn also affirmatively responded that he understood. Finally, Littlejohn signed a written plea agreement incorporating much of the same information. Following entry of the plea, the court released Littlejohn from custody and modified the protective order to allow Littlejohn to contact Wife. The court scheduled a sentencing hearing to take place a few weeks later.

¶7     In the meantime, Littlejohn was screened for possible participation in the local mental health court, a specialty court for individuals with diagnosed mental illnesses which is designed to address not only the crime committed, but also the underlying mental health condition that may have contributed to its commission. *See Mental Health Court FAQs*, National Alliance on Mental Illness: Utah, https:namiut.org/resources/ite m/516-mental-health-court-faqs [https://perma.cc/6UC3-FHSJ] [hereinafter *FAQs*]; *see also* E. Lea Johnston, *Theorizing Mental Health Courts*, 89 Wash. U. L. Rev. 519, 521 (2012) [hereinafter Johnston, *Theorizing*]. Like forty-two other states, Utah has created mental health courts in many of its judicial districts. *See Mental Health Courts Operating in Utah*, https://le.utah.gov/interi m/2016/pdf/00002566.pdf [https://perma.cc/M3D6-BG6T]; *see also* E. Lea Johnston & Conor P. Flynn, *Mental Health Courts and*

*Sentencing Disparities*, 62 Vill. L. Rev. 685, 686 (2017) (stating that forty-three states use mental health courts). To qualify for mental health court in Utah, an offender must be diagnosed with a specific categorized mental disorder, and the crime in question must not have been a violent crime involving "significant bodily injury" or (in most cases) a sexual crime. *FAQs*; *see also* Johnston, *Theorizing*, at 566 n.263 ("Mental health courts as they are currently formulated accept only the good risks. Cases are limited to those where the crimes are minor and the risk of violence minimal." (quotation simplified)). Prior to entering mental health court, the offender must plead guilty to the offense in question, but the sentence is then suspended while the offender participates in a rigorous treatment program supervised by prosecutors and professional treatment providers and involving weekly status hearings in court. *See FAQs*. If the offender successfully completes the program, the offender receives a reduced sentence or even dismissal of the charges; if the offender fails to complete the program, the conviction is entered and sentence imposed. *See id.* The goal of mental health court is to reduce recidivism and incarceration of mentally ill offenders by safely and properly addressing the underlying issues that contributed to participants' criminal activity. *See id.* Mental health courts have been successful; studies show that mental health court participants (regardless of whether they completed the program) show a "substantial" reduction in recidivism more than one year after initial enrollment. *See* Dale E. McNiel & Renee L. Binder, *Effectiveness of a Mental Health Court in Reducing Criminal Recidivism and Violence*, 164 Am. J. Psychiatry 1395, 1401 (2007).

¶8    Given his history, Littlejohn was a credible candidate for mental health court. In the fall of 2019, while under court supervision related to the domestic assault plea in abeyance, Littlejohn underwent a "combined substance use and mental health assessment" with a licensed behavioral health therapist.

The evaluator's report from that assessment (the Assessment Report) is not included in the record submitted to us. But the record does include another health professional's brief summary of the Assessment Report's content. According to the summary, the Assessment Report indicated that Littlejohn was diagnosed with post-traumatic stress disorder (PTSD), panic disorder, and "psychoactive substance-induced disorder," and recommended that Littlejohn undergo weekly individual therapy, couples counseling with Wife, and medication management. While in custody following the November 2019 incident, Littlejohn continued to meet with mental health professionals and pursue treatment; in particular, he "attended jail group and started medication management with the med team at the jail." Even after release following entry of the plea, Littlejohn continued to pursue mental health treatment, including individual therapy sessions, and one treatment provider opined that Littlejohn was "making progress and gaining stability." At some point prior to the scheduled sentencing hearing, those in charge of the local mental health court made the decision that Littlejohn was an appropriate candidate and indicated that they were willing to accept Littlejohn into the program.

¶9 Also prior to the sentencing hearing, Adult Probation and Parole (AP&P) prepared a presentence investigation report (PSR) regarding Littlejohn for the court's benefit at sentencing. In the PSR, AP&P concluded that, under the general sentencing matrix, a person in Littlejohn's situation should ordinarily be given a suspended prison sentence and be placed on supervised probation subject to certain conditions, including serving a jail sentence of up to 180 days. But in Littlejohn's case, AP&P recommended that the court deviate from the guidelines' recommendation, and simply impose a prison sentence. AP&P concluded that Littlejohn was a "community safety risk," and based that conclusion on Littlejohn's previous "multiple violent offenses" and the fact that he had been given "the opportunity at

supervision in the past and was under the [c]ourt's supervision when he committed the present offenses."

¶10 At the sentencing hearing, the State acknowledged that Littlejohn had been accepted into mental health court, but nevertheless voiced its agreement with AP&P's recommendation. The prosecutor stated her belief that Littlejohn was "not fit for community supervision" and that Wife's life would be "in jeopardy" if Littlejohn remained out of prison. Littlejohn's attorney (Counsel), by contrast, argued vigorously that the court should afford Littlejohn the opportunity to participate in mental health court. Counsel emphasized that Littlejohn appeared to be making significant progress in treatment, and asserted that the situation between Littlejohn and Wife was improving. Wife also appeared at the sentencing hearing and urged the court not to sentence Littlejohn to prison, stating that she needed Littlejohn at home and that he was "a whole different person" since beginning therapy and taking medication. Finally, Littlejohn addressed the court. He began by discussing his mental health struggles, disclosing that he previously was "always thinking about suicide" and "used to be angry every day." Littlejohn claimed that, since beginning treatment and his medication regimen, he "hadn't had an angry day" or suicidal thoughts, but postulated that if he went to prison it could make him more violent.

¶11 Nevertheless, the court sentenced Littlejohn to prison on all three felony counts, ordering that the sentences run concurrently with one another. The court acknowledged that this was a "difficult case[]" and commended Littlejohn for the strides he had taken to get mental health treatment. But the court expressed concern over what it described as "a number of violent episodes" that had become "increasingly violent" over the years, and stated that it had "to look at also the safety of the community," that it was "very concerned" because it did not

know what would happen should Littlejohn discontinue his medication, and that it did not "dare take a chance anymore."

ISSUES AND STANDARDS OF REVIEW

¶12    Littlejohn now appeals his prison sentences for the felony convictions,[2] and raises three main issues for our review. First, he argues that his plea was improperly entered without appropriate assessment of his mental health issues. There are two components to this argument: Littlejohn asserts that the district court plainly erred by not evaluating his mental health diagnoses more fully before accepting the plea, and in addition contends that Counsel rendered ineffective assistance at the plea hearing for similar reasons. The State raises a jurisdictional challenge to this portion of Littlejohn's appeal, asserting that, because Littlejohn did not file a motion to withdraw his plea prior to imposition of sentence, Utah's plea withdrawal statute bars any direct appeal of these issues. We find merit in the State's jurisdictional challenge, a question we review in the first instance as a matter of law, *see State v. Allgier*, 2017 UT 84, ¶ 13, 416 P.3d 546, and therefore we do not reach the merits of Littlejohn's challenges to entry of the plea.

¶13    Second, Littlejohn challenges his sentence on the merits, and asserts that the district court should have suspended his prison sentences and allowed him to participate in mental health court. District courts are afforded "wide latitude" in sentencing. *State v. Moa*, 2012 UT 28, ¶ 34, 282 P.3d 985 (quotation

---

2. Littlejohn does not appeal his sentence on the two misdemeanor charges in the plea-in-abeyance case. Littlejohn's challenges to his felony sentences, though arising in two different cases at the district court level, have been consolidated into one case for purposes of appeal.

simplified). Indeed, our supreme court has stated that sentencing courts are better positioned than appellate courts "to weigh the many intangibles of character, personality, and attitude" that play into a sentencing determination. *See State v. Killpack*, 2008 UT 49, ¶ 58, 191 P.3d 17 (quotation simplified). We will not overturn a district court's sentencing decision unless the sentence "exceeds statutory or constitutional limits, the [court] failed to consider all the legally relevant factors, or the actions of the [court] were . . . inherently unfair." *Id.* ¶ 59 (quotation simplified); *see also State v. Gasper*, 2018 UT App 164, ¶ 26, 436 P.3d 200 (stating that we review sentencing determinations for "an abuse of discretion," reversing "only if no reasonable person would take the view adopted by the district court" (quotation simplified)).

¶14 Finally, Littlejohn asserts that Counsel was constitutionally ineffective during the sentencing phase of his case. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law, which we consider de novo." *State v. King*, 2018 UT App 190, ¶ 11, 437 P.3d 425 (quotation simplified).

ANALYSIS

I

¶15 We begin by addressing Littlejohn's claim that his plea is void because, given his mental health struggles, neither the court nor Counsel properly engaged with Littlejohn about his capacity to enter the plea. Littlejohn did not raise these challenges before the district court; in particular, Littlejohn did not file a motion to withdraw his plea prior to sentencing. Littlejohn acknowledges that these challenges are unpreserved, but asks that we review them for plain error and ineffective assistance of counsel, respectively. However, we lack jurisdiction to review such

claims because Utah law forecloses direct appellate review of all challenges to the propriety of a guilty plea unless those challenges were included in a motion to withdraw the plea filed prior to sentencing. *See State v. Allgier*, 2017 UT 84, ¶¶ 18–19, 416 P.3d 546; Utah Code Ann. § 77-13-6 (LexisNexis 2017).

¶16 Our legislature has enacted a statute (the Plea Withdrawal Statute) that governs the withdrawal of a defendant's plea. *See* Utah Code Ann. § 77-13-6. Under the terms of the Plea Withdrawal Statute, a guilty plea "may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." *Id.* § 77-13-6(2)(a). Any request to withdraw such a plea "shall be made by motion before [the] sentence is announced." *Id.* § 77-13-6(2)(b). And "[a]ny challenge to a guilty plea not made" prior to sentencing "shall be pursued," if at all, in a post-conviction proceeding. *Id.* § 77-13-6(2)(c).

¶17 In interpreting the Plea Withdrawal Statute, our supreme court has explained that, by requiring defendants to seek withdrawal of guilty pleas prior to sentencing, the statute "establishes a standard of preservation" and "imposes a strict sanction of waiver that is not subject to" the common-law exceptions to our preservation doctrines, including plain error and ineffective assistance of counsel. *See State v. Rettig*, 2017 UT 83, ¶¶ 34, 44, 416 P.3d 520; *see also Allgier*, 2017 UT 84, ¶¶ 26, 28 (stating that the Plea Withdrawal Statute presents a "jurisdictional bar" that cannot be evaded "through the exceptions to preservation," and that when a defendant fails to seek withdrawal of a plea before sentencing, that defendant "forfeit[s] [the] right to a direct appeal" and must pursue any unpreserved challenges in a post-conviction proceeding). "Thus, the Plea Withdrawal Statute, combined with long-standing preservation doctrines, operates to prevent a defendant from raising, on direct appeal, new grounds for withdrawal of a plea—even by means of plain error review or claims for ineffective assistance of counsel—that were not brought to the

attention of the trial court prior to sentencing." *State v. Harper*, 2020 UT App 84, ¶ 14, 466 P.3d 744; *see also State v. Brown*, 2021 UT 11, ¶ 26 ("[T]he Plea Withdrawal Statute bars the appellate courts of Utah from reviewing on direct appeal *all* untimely or unpreserved challenges to guilty pleas.").

¶18  In this case, because Littlejohn did not seek to withdraw his plea prior to imposition of sentence, the Plea Withdrawal Statute mandates that any challenges to the propriety of his plea must be pursued through post-conviction proceedings. We have no jurisdiction to review such challenges now, even when they are brought to us in the form of claims for plain error or ineffective assistance of counsel. *See* Utah Code Ann. § 77-13-6(2); *Allgier*, 2017 UT 84, ¶¶ 26, 28.

¶19  Littlejohn resists this conclusion, asserting that the Plea Withdrawal Statute only governs challenges to the "knowing and voluntariness" of the plea, and does not govern situations in which there have been "strict compliance violations" during the plea colloquy. Relying on rule 11 of the Utah Rules of Criminal Procedure, Littlejohn asserts that the court and Counsel had a duty to ensure that the plea colloquy was sufficient to meet constitutional and procedural protections, and that his challenges to compliance with this rule do "not actually fall under the [Plea Withdrawal Statute] and the jurisdictional bar contained therein." In sum, he contends that the Plea Withdrawal Statute applies "only when the error and burden are the defendant's, [and] not when the trial court has failed in its strict compliance with its duties and responsibilities." This argument is unpersuasive.

¶20  Rule 11 outlines elements conducive to a constitutionally valid plea hearing, *see* Utah R. Crim. P. 11, and "is designed to protect an individual's rights when entering a guilty plea by ensuring that the defendant receives full notice of the charges, the elements, how the defendant's conduct amounts to a crime,

the consequences of the plea, etc.," *see State v. Alexander*, 2012 UT 27, ¶ 17, 279 P.3d 371 (quotation simplified). But our supreme court has made clear that, "although rule 11 provides guidance for the entry of guilty pleas, any attempt to withdraw that plea is governed by statute." *See id.* ¶ 19 (quotation simplified); *see also State v. Velarde*, 2015 UT App 71, ¶ 8, 347 P.3d 452 ("Rule 11 governs the taking of guilty pleas, but not their withdrawal."). *See generally State v. Walker*, 2013 UT App 198, 308 P.3d 573 (applying the Plea Withdrawal Statute to a rule 11 strict compliance challenge). Indeed, it is "the federal Due Process Clause and our Plea Withdrawal Statute—not rule 11"—that govern the question of whether a guilty plea may be withdrawn. *See State v. Trotter*, 2014 UT 17, ¶ 8, 330 P.3d 1267.

¶21 Littlejohn also attempts to support his argument by citation to *State v. Beckstead*, 2006 UT 42, 140 P.3d 1288, asserting that our supreme court, in that case, "differentiated the type of appellate issues raised pertaining to Rule 11 and plea withdrawals," and instituted a requirement that there be "meaningful engagement" between the defendant and the court during the plea colloquy. But in *Beckstead*, the defendant's challenges to his plea colloquy were timely under the Plea Withdrawal Statute and thus merited direct appellate review. *See id.* ¶ 4; *see also* Utah Code Ann. § 77-13-6(2)(a)–(b). In that procedural scenario, an appellate court may examine whether a "meaningful engagement" took place between the defendant and the court during the plea colloquy. *See Beckstead*, 2006 UT 42, ¶ 18. Because the defendant had timely moved to withdraw his plea, the *Beckstead* court did not discuss or apply the Plea Withdrawal Statute's jurisdictional bar; indeed, nothing in *Beckstead* supports the proposition that the jurisdictional bar is to be applied on a case-by-case basis depending on the nature of the alleged error. *See id.* ¶¶ 10–21.

¶22 Finally, Littlejohn's argument is foreclosed by our supreme court's recent ruling in *State v. Flora*, 2020 UT 2, 459

P.3d 975, a case materially indistinguishable from this one. In *Flora*, the defendant attempted to argue, on appeal, that "his behavior throughout the proceedings should have alerted the district court and trial counsel to the possibility that he was not competent to plead guilty." *Id.* ¶ 5. And as in this case, the defendant in *Flora* raised those issues in the form of plain error and ineffective assistance of counsel claims, because he had not made those arguments in any presentence motion to withdraw the plea. *See id.* ¶¶ 5, 18. For this reason, the supreme court refused to consider them, stating that "while [the defendant] could likely [have] raise[d] these challenges under the common-law preservation rule, the Plea Withdrawal Statute's preservation rule bar[red] him from doing so here." *Id.* ¶ 18.

¶23 Accordingly, pursuant to the Plea Withdrawal Statute, we lack jurisdiction, on direct appeal, to consider Littlejohn's challenges to the propriety of his guilty plea, even where those claims come to us in the form of claims of plain error and ineffective assistance of counsel. We therefore dismiss the part of Littlejohn's appeal that seeks to challenge the propriety of his guilty plea. *See Zion Village Resort LLC v. Pro Curb U.S.A. LLC*, 2020 UT App 167, ¶ 56, 480 P.3d 1055 ("When we lack appellate jurisdiction, we retain only the authority to dismiss the appeal." (quotation simplified)).

II

¶24 We now turn to Littlejohn's challenge to the substance of his sentence: he asserts that the district court abused its discretion in sentencing him to prison rather than affording him the opportunity to participate in mental health court. Littlejohn mounts a two-part challenge to the court's sentencing decision.

¶25 First, Littlejohn argues that the court abused its discretion by failing to adequately consider all the legally relevant

sentencing factors. *See State v. Cline*, 2017 UT App 50, ¶ 7, 397 P.3d 652 ("When making sentencing decisions, courts weigh and consider the following factors: public safety, punishment, deterrence, incapacitation, restitution, and rehabilitation."). He points to only one factor that he believes the court failed to properly consider: his rehabilitative needs, and specifically his mental health issues. We reject this argument, because the court was well aware of, and clearly considered, Littlejohn's mental health issues before imposing sentence.

¶26 There is no question that the court had Littlejohn's mental health issues well in mind at sentencing. In the PSR, which was available to the court prior to the hearing, AP&P noted that Littlejohn suffered from "depression and anxiety" and from PTSD. In addition, Littlejohn submitted to the court a letter from a health care professional that contained a summary of the Assessment Report; in that letter, the court was informed that Littlejohn had been diagnosed with PTSD and panic disorder, and that he was involved in therapy and "medication management" for his mental health conditions.[3] The letter also indicated that Littlejohn was

---

3. Littlejohn asks us to consider a second letter from a different health care professional, and attaches it to his brief. But as Littlejohn acknowledges, the letter was filed after sentencing, was not considered by the district court, and is not properly part of the record. Under these circumstances, we cannot consider the letter as part of our appellate review. *See State v. MacNeill*, 2016 UT App 177, ¶ 41, 380 P.3d 60 ("An appellate court's review is limited to the evidence contained in the record on appeal." (quotation simplified)); *see also State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279 (explaining that a party may not add new materials to the record on appeal "by simply including the omitted material in the party's addendum" to a brief).

"making progress and gaining stability," and that it was "recommended" that Littlejohn continue with therapy and medication management.

¶27 In addition to the materials submitted prior to the hearing, the court also had the benefit of the discussion at the sentencing hearing. At the outset of the hearing, the prosecutor opened her presentation by stating that Littlejohn had been "accepted into the mental health court." When Counsel addressed the court, he emphasized that Littlejohn had "started receiving some mental health treatment that was desperately needed," including both therapy and medication, and offered his view that "mental health court is where [Littlejohn] belongs." Counsel even provided the court with a complete list of Littlejohn's prescribed medications. In addition, Wife told the court how, in her view, Littlejohn was coping much better with his conditions since receiving treatment. And Littlejohn, in his allocution, told the court that he suffered from PTSD and "major depression," that he was "always thinking about suicide," and that his depression was "one of the reasons why [he had] such a short fuse and [had gotten] so violent." He noted that, prior to his recent offenses, he "didn't know [he] had severe mental issues," and that since he had begun treatment, he had not "had an angry day," and he felt "so much better" since being on the medication. Even the prosecutor, in her last word to the court, referenced Littlejohn's mental health issues, stating that she "appreciate[d] the defendant's acknowledgment that he needs help and that he is taking strides to get . . . treatment right now," but offering her view that prison was nevertheless the proper sentence because "community supervision" was not "appropriate for [Littlejohn], given his history." Finally, the court itself alluded to Littlejohn's mental health struggles in its comments immediately prior to imposing sentence, with the court telling Littlejohn, "I appreciate that you are undergoing treatment right now, but I don't know what would stop you

from—if you don't take your medication what's going to happen."

¶28 Littlejohn's contention that the district court failed to consider his mental health issues at sentencing is therefore not borne out by the record. The court was presented with a lot of information about Littlejohn's mental health, and not only must we presume that the court considered the information presented to it, *see State v. Atkinson*, 2017 UT App 83, ¶ 8, 397 P.3d 874 ("When evidence of mitigating factors is properly presented to the sentencing court, we . . . assume that the court appropriately considered that evidence in its sentencing decision."), it is apparent from the court's comments that it did consider the information. Fairly stated, Littlejohn's complaint is not that the court failed to consider his mental health issues, but that the court failed to give that information the weight Littlejohn believes it should have been given. That argument simply has no traction on appeal. *See State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17 (recognizing that, when considering the "legally relevant factors," a sentencing court may, within its considerable discretion, choose how to weigh individual mitigating and aggravating factors); *State v. Wood*, 2018 UT App 98, ¶ 12, 427 P.3d 452 ("While failure to consider all legally relevant sentencing factors is an abuse of discretion, a sentencing court is not required to weigh all the factors equally." (quotation simplified)).

¶29 Second, Littlejohn argues that the sentence was unfair given his mental health diagnoses, the crimes committed, and Wife's testimony regarding his progress and her desire to have him return home. We disagree. In this case, the court clearly considered the mitigating factor identified by Littlejohn—his mental health conditions and his efforts and progress in addressing them—and determined that it was outweighed by other aggravating factors, most notably the violent nature of the offenses and the safety risk Littlejohn presented to Wife and the

community. The court showed careful consideration of the legally relevant mitigating and aggravating factors in articulating its decision. Another sentencing judge may well have seen the matter differently and allowed Littlejohn an opportunity to benefit from mental health court. But we see no abuse of discretion on the part of this sentencing judge in imposing the prison sentence; certainly, we cannot say that "no reasonable person would take the view adopted by the district court." *See State v. Gasper*, 2018 UT App 164, ¶ 26, 436 P.3d 200 (quotation simplified).

¶30    For these reasons, we reject Littlejohn's challenge to the substance of the sentence imposed upon him.

### III

¶31    Finally, we address Littlejohn's claim that Counsel provided constitutionally ineffective assistance at sentencing. To demonstrate ineffective assistance, Littlejohn must show both that (1) Counsel's performance was deficient and (2) this deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong—deficient performance—places the burden on Littlejohn to show that Counsel's performance "fell below an objective standard of reasonableness." *See State v. Scott*, 2020 UT 13, ¶ 31, 462 P.3d 350 (quotation simplified). For the second prong—prejudice—Littlejohn must show that there exists a "reasonable probability that the outcome of his . . . case would have been different absent" Counsel's errors. *See id.* ¶ 43. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶32    Littlejohn contends that Counsel rendered ineffective assistance at sentencing in two separate respects. First, he contends that Counsel failed to adequately investigate the seriousness of Littlejohn's mental health issues prior to

sentencing.[4] Second, he contends that Counsel failed to object to the Assessment Report's absence from the PSR. We address each argument in turn.

A

¶33 Littlejohn's first ineffective assistance claim fails on both prongs, because Littlejohn has failed to identify what additional investigation Counsel should have undertaken, what information that investigation should have uncovered, or how the results of such an investigation would have made a difference.

¶34 As noted, *supra* ¶¶ 8, 26–27, the record—even as it stands now—contains considerable information about Littlejohn's mental health struggles and the steps he had begun to take to address them. But Littlejohn does not specifically identify what else Counsel might have discovered, how Counsel might have gone about discovering it, or how any additional information would have made a difference to the outcome of his case. For all we can tell from the record before us, Counsel might very well have already reasonably investigated Littlejohn's mental health issues, but that investigation might not have yielded any

---

4. Littlejohn attempts to raise this same ineffective assistance argument with respect to entry of his guilty plea: he asserts that Counsel failed to adequately investigate his mental health issues prior to entry of the plea. But as noted, *supra* part I, we lack jurisdiction to consider any claim going to the propriety of Littlejohn's guilty plea, because Littlejohn did not seek to withdraw his plea prior to imposition of sentence. In this section, we therefore address only Littlejohn's claim that Counsel performed ineffectively at sentencing, and not any related claim that Counsel performed ineffectively in connection with entry of Littlejohn's plea.

additional material information. *See Strickland*, 466 U.S. at 689 (noting that courts must afford a "strong presumption that counsel's conduct" was reasonable); *see also State v. Archuleta*, 2019 UT App 136, ¶¶ 26, 29, 449 P.3d 223 (rejecting a similar claim for similar reasons, stating that "for all we can tell from this record, his attorney completed a reasonable investigation but found nothing helpful"). And without knowing what else Counsel might have been expected to find, it is impossible for us to meaningfully evaluate whether any such information might have made a difference to the outcome of Littlejohn's sentencing. *See Jones v. State*, 2020 UT App 125, ¶ 40, 473 P.3d 1190 (rejecting a challenge where the defendant had "not proffered what specific evidence further investigation would have yielded and how that evidence would have affected the entire evidentiary picture" (quotation simplified)).

B

¶35 Littlejohn's second ineffective assistance claim—that counsel unreasonably failed to object to the PSR on the basis that it did not include a copy of the Assessment Report—founders for similar reasons: the Assessment Report is not a part of the record on appeal, and without an opportunity to examine its contents, we cannot say that Counsel rendered ineffective assistance by failing to object to its absence from the PSR.[5]

---

5. We note that Littlejohn has not filed any motion for remand to supplement the appellate record with non-record information necessary to prove his ineffective assistance claim. Such motions are authorized by rule 23B of the Utah Rules of Appellate Procedure, a provision that provides a "ready procedural mechanism for addressing" inadequacies in an appellate record. *See State v. Litherland*, 2000 UT 76, ¶ 14, 12 P.3d 92.

¶36 We assume, without deciding and for purposes of our analysis, that a copy of the Assessment Report should have been included with the PSR. *See* Utah Code Ann. § 77-18-1.1(3) (LexisNexis 2017) ("The findings from any screening and any assessment conducted under [the criminal screening, assessment, and treatment] section shall be part of the presentence investigation report submitted to the court before sentencing of the convicted person."). But Counsel could have made a strategic decision *not* to object to the Assessment Report's non-inclusion in the PSR; after all, the Assessment Report may well have contained information that Counsel did not want the sentencing judge to see. *See State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871 ("If it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance."). Without the ability to examine the Assessment Report, we cannot eliminate that possibility, and on that basis alone Littlejohn has not carried his burden of demonstrating that Counsel rendered deficient performance. *See Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct" was reasonable).

¶37 Moreover, without being able to examine the Assessment Report, we have no basis to believe that its inclusion in the PSR would have been reasonably likely to alter the outcome of the sentencing hearing. As noted, the court was well aware of Littlejohn's mental health issues, and had the benefit of quite a bit of information and argument regarding his specific issues and their effects. Under these circumstances, Littlejohn has not demonstrated that there exists a reasonable probability that the outcome of the hearing would have been different had the court had access to the Assessment Report.

¶38 For these reasons, we conclude that Littlejohn has not carried his burden of demonstrating that Counsel rendered constitutionally ineffective assistance during sentencing.

CONCLUSION

¶39   We lack appellate jurisdiction to address Littlejohn's challenges to the propriety of his guilty plea. Because Littlejohn did not make a motion to withdraw the plea prior to imposition of sentence, any such challenges must be brought, if at all, in a post-conviction proceeding. We therefore dismiss the part of Littlejohn's appeal that challenges the propriety of his guilty plea.

¶40   As to the merits of the remaining appellate issues, the district court did not abuse its discretion in sentencing Littlejohn to prison rather than allowing him to participate in mental health court. And finally, Littlejohn has not carried his burden of demonstrating that Counsel rendered ineffective assistance at sentencing. On that basis, we affirm Littlejohn's sentence.

――――――